United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULVIO CASTILLO GOMEZ,<br>Plaintiff,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Defendants. | Case No. 26-cv-11107-WHO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

On September 29, 2026, the Hon. Beth Labson Freeman granted a temporary restraining order barring respondents Sergio Albarran, David J. Venturella, Markwayne Mullin, and Todd W. Blanche (collectively, "the government") from re-detaining petitioner Fulvio Castillo Gomez ("Mr. Gomez") or removing him from the United States pending further briefing and a hearing on this matter. Judge Freeman also issued an Order to Show Cause requiring the government to explain why a preliminary injunction should not issue. The government has now responded, claiming that the instant petition is an abuse of the writ and that Mr. Gomez is unlikely to succeed on the merits of his claims. By contrast, Mr. Gomez has established the existence of serious questions going to the merits, that he faces irreparable harm in the absence of injunctive relief, and that both the balance of equities and the public interest weigh in his favor. For the additional reasons set forth below, his request for a preliminary injunction is GRANTED.

**BACKGROUND**

Mr. Gomez, a native and citizen of El Salvador, first entered the United States in 2006. Petition for Writ of Habeas Corpus ("Pet.") [Dkt. No. 1] ¶¶ 13, 23. He was apprehended, processed for removal proceedings, and released on his own recognizance the following day, though he had no address in the United States. *Id.* ¶ 23. On May 2, 2006, he was ordered

removed in absentia two months later on a notice that, he alleges, was never communicated to him. *Id.* ¶ 24. The parties agree that the removal order was never served on him. *Id.* Since then, Mr. Gomez has lived in Napa, California, for twenty years. *Id.* ¶ 25. He has married, raised children, built a business, and is the sole financial support of his wife, who was treated for cancer. *Id.*

On March 2, 2026, ICE officers arrested Mr. Gomez in a bank parking lot in Napa. *Id.* ¶ 26. He filed a petition for a writ of habeas corpus that evening. Petition for Writ of Habeas Corpus, *Castillo Gomez v. Albarran*, No. 26-CV-01790-NW (N.D. Cal. Mar. 2, 2026), ECF No. 1. The Hon. Noel Wise granted a temporary restraining order, ordered him released, and enjoined his re-detention without notice and a pre-deprivation hearing before a neutral decisionmaker. Pet. ¶ 26. He was released the next day on an Order of Supervision requiring him to report in person to the San Francisco Field Office. *Id.* ¶¶ 26, 28.

After the petition was filed, the government disclosed the existence of the 2006 in absentia order. *Id.* ¶ 27. Judge Wise later granted a preliminary injunction and held that Mr. Gomez was entitled to a pre-deprivation hearing. *See id.* On August 5, 2026, Mr. Gomez filed a motion to rescind the in absentia order and reopen proceedings in the Harlingen Immigration Court. *Id.* ¶ 30. The motion remains pending, staying his removal. *Id.*

On August 10, 2026, Mr. Gomez attended his pre-deprivation hearing. *Id.* ¶ 32. There, the immigration judge found that Mr. Gomez was not a danger to the community but was a flight risk and ultimately concluded that Mr. Gomez could be re-detained. *Id.* ¶ 34. Mr. Gomez appealed the custody decision to the Board of Immigration Appeals on September 8, 2026. *Id.* ¶ 35.

Mr. Gomez also moved to enforce the preliminary injunction on the basis that the hearing did not comply with it. *Id.* ¶ 36. At the hearing, counsel for the government confirmed that, absent an order of the Court, the government would be empowered to detain Mr. Gomez at his upcoming September 2026 check-in. *Id.* ¶ 37. Judge Wise denied the motion to enforce. Order Denying Motion to Enforce Preliminary Injunction at 8, *Castillo Gomez v. Albarran*, No. 26-CV-01790-NW (Sept. 30, 2026), ECF No. 79.

On September 29, 2026, the date of his check-in, Mr. Gomez reported to the San Francisco

Field Office and was taken into custody. Pet. ¶ 38. That same day, he filed the instant petition for writ of habeas corpus and a motion for a temporary restraining order. Pet.; Mot. [Dkt. No. 2]. Judge Freeman, acting in her capacity as a general duty judge, granted the motion for a temporary restraining order on September 29, 2026, and ordered his immediate release from custody. Order Granting Ex Parte Application for Temporary Restraining Order ("TRO Order") [Dkt. No. 5]. The government released Mr. Gomez on September 30, 2026. Dkt. No. 10. Judge Freeman also issued an Order to Show Cause, requiring the government to show why a preliminary injunction should not be issued in favor of Mr. Gomez. TRO Order at 7–8. The government submitted its response to the Order to Show Cause on October 5, 2026. *See* Oppo [Dkt. No. 11]. Mr. Gomez replied on October 6, 2026. *See* Reply [Dkt. No. 13]. I held oral argument on October 9, 2026.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has adopted a sliding scale approach, where a plaintiff may obtain an injunction so long as he has demonstrated "serious questions going to the merits," that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

## DISCUSSION

### I. Serious Questions Going to the Merits

#### A. Whether The Petition is an Abuse of the Writ

The government contends that Mr. Gomez has abused the writ of habeas corpus by filing successive petitions. *See* Oppo. at 1–3. The abuse-of-writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023) (citation omitted). Under this doctrine, the court must dismiss "a successive petition that raises *identical* grounds for relief as a prior petition . . . unless the

petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* (citation omitted). To determine whether a claim is "successive," the court must look at the substance of the claim and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application. *Id.* at 552.

In the instant petition, Mr. Gomez challenges his detention during the pendency of his motion to reopen, while his first petition challenged his re-detention without a pre-deprivation hearing in March of 2026. The claims in this current petition are based on his detention pending the motion to reopen that he filed on August 5, 2026, and findings from the August 10, 2026, hearing in immigration court. *See* Pet. ¶¶ 44–63. Moreover, the district court in the prior case did not address the merits of the issues Mr. Gomez raises now and denied the motion to enforce the preliminary injunction in that first case on other grounds. *See* Mot. Ex. E at 16–17; Order Denying Motion to Enforce Preliminary Injunction at 7–8, *Castillo Gomez v. Albarran*, No. 26-CV-01790-NW (Sept. 30, 2026), ECF No. 79.

The government asserts that Judge Wise was aware of the motion to reopen and the pre-deprivation hearing when she denied the motion to enforce. Oppo. at 2. But what matters is whether a court has previously addressed Mr. Gomez's claims on the merits and whether those claims could have been included in the earlier petition, not whether some of the facts later came before the court. *See Eldridge*, 70 F.4th at 532. Here, the present petition challenges detention following the hearing that resulted from the earlier petition. That challenge "necessarily depends, at least in part, on the additional period of detention that followed the court's resolution of his first petition." *Mario Rene C.C. v. Warden*, No. 26-CV-05037, 2026 WL 2444748, at *2 (E.D. Cal. Aug. 19, 2026). Multiple courts have held that the second petition is not an abuse of the writ where "the first petition sought process that Petitioner had not yet received, while [the second] petition challenges his continued detention after that process occurred." *Id.* (collecting cases).[1] This case is no different, and I find that the instant petition is not an abuse of the writ.

[1] Judge Wise denied the parties' administrative motion to relate the two habeas cases, which further undercuts the government's argument that the pending habeas is "successive" to the earlier

United States District Court
Northern District of California

**B. Whether Detention is Authorized Under 8 U.S.C. Section 1231(a)(6)**

When a final order of removal has been entered against a noncitizen, the government must detain the noncitizen and facilitate his removal within a 90-day "removal period." *Tuan Thai v. Ashcroft*, 366 F.3d 790, 793 (9th Cir. 2004). Detention beyond that 90-day removal period is authorized by section 1231(a)(6), which provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, for committing a criminal offense, or for reasons of national security or foreign policy] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court explained that section 1231(a)(6) does not permit indefinite detention but instead limits the post-removal-period detention to a period reasonably necessary to bring about that noncitizen's removal from the United States. *Id.* at 689. According to the Supreme Court, that period is presumptively six months. *Id.* at 701. But "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*

The government argues that detention is permitted under section 1231(a)(6) because the 180-day period during which removal is presumptively reasonably foreseeable begins "[u]pon detention." Oppo. at 3. The government further asserts that "[t]hough removal cannot be executed immediately due to Petitioner's pending motion to reopen his case, Respondents expect the immigration court to adjudicate the motion to reopen during the pending 180-day period." *Id.* Mr. Gomez's chief argument is that removal is not "reasonably foreseeable" while it is stayed by his pending motion to reopen and that he does not have to wait six months to challenge his detention. *See* Mot. at 12; Reply at 12–14.

Regarding the threshold matter of whether Mr. Gomez may challenge his detention before the six-month period has passed, *Zadvydas* does not bar a noncitizen from challenging detention

---

one. Order Denying Administrative Motion to Relate Cases, *Castillo Gomez v. Albarran*, No. 26-CV-01790-NW (Oct. 5, 2026), ECF No. 80.

before the end of the six-month period. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020). *Zadvydas* established a "guide" for approaching detention challenges, not a categorical prohibition on claims challenging detention before that six-month period. *See* 533 U.S. at 700–01; *see also Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring) ("For one thing, the 6-month presumption we described in *Zadvydas* . . . is just that—a presumption."). It held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has "exceed[ed] a period reasonably necessary to secure removal" in individual cases. *See id.* at 699.

Moreover, a growing number of courts have questioned and rejected the government's assumption that the six-month period during which removal is presumptively reasonably foreseeable begins upon detention. *See, e.g.*, *Castro-Napoles v. Noem*, No. 26-CV-03212, 2026 WL 1720963, at *2–3 (S.D. Cal. June 15, 2026); *Santamaria-Mejia v. ICE*, No. 26-CV-07437, 2026 WL 2018107, at *3–4 (D.N.J. July 13, 2026) (collecting cases); *Santos Garcia v. Mullin*, No. 26-CV-04133, 2026 WL 2969386, at *8 (S.D. Cal. Sept. 17, 2026). Those courts did so because Congress measured the six-month period from the date of the removal order, regardless of the non-citizen's detention status. *See Khoury v. Garite*, 838 F. Supp. 3d 670, 678–81 (W.D. Tex. 2026) (analyzing *Zadvydas* and the underlying legislative history on which the Supreme Court relied). I find the reasoning of these courts to be persuasive and recognize that there is at least substantial doubt whether the six-month presumption applies here, given that the removal order was issued in 2006.

Accordingly, I must ask whether removal is "reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. The noncitizen bears of the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* at 701. Here, Mr. Gomez argues that removal is not "reasonably foreseeable" while it is stayed by his pending motion to reopen. *See* Mot. at 12. His filing of the motion automatically stays the removal order, pending resolution by the immigration judge. 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii). Mr. Gomez has therefore shown good reason to believe that there is not a

significant likelihood of removal in the reasonably foreseeable future, thus shifting the burden to the government.

The government responds that it "expect[s] the immigration court to adjudicate the motion to reopen during the pending 180-day period." Oppo. at 3. It provides no basis for this expectation. Nor does it consider the possibility of the motion being granted, in which case the removal order will cease to exist.

District courts confronting the same posture have found that there is no significant likelihood of removal in the reasonably foreseeable future. In *Tinuar Tecun v. Wilson*, No. 26-CV-11081, 2026 WL 2859096 (D.N.J. Sept. 23, 2026), the petitioner's removal was also automatically stayed while her motion to reopen and rescind the in absentia removal order was pending before the immigration court. *Id.* at *3. The government represented that it would effectuate the petitioner's removal once the immigration court denied the motion and the district court lifted its no-transfer order. *Id.* The district court reasoned that the government's representation "establishes only that Respondents intend to pursue removal at some unspecified point in the future if two contingencies occur," not "when those contingencies will occur or . . . that removal is significantly likely in the reasonably foreseeable future." *Id.* Likewise, in *Santamaria-Mejia v. ICE*, No. 26-CV-07437, 2026 WL 2018107 (D.N.J. July 13, 2026), the court found that there was not a significant likelihood of removal because of the uncertainty of how long it would take for the immigration court to resolve the mending motion to reopen and rescind. *See id.* at *4 ("Indeed, given the immense congestion in the immigration courts, these proceedings could take many months to resolve if not longer."). Those uncertainties are present here.

Because the government has not demonstrated a significant likelihood of removal in the reasonably foreseeable future, Mr. Gomez has raised a serious question regarding his claim that he is not subject to re-detention under section 1231(a)(6). This serious question supports the issuance of a preliminary injunction, and I need not reach his other claims at this time.

## II. Irreparable Harm

Mr. Gomez is likely to suffer irreparable harm absent a preliminary injunction. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention,"

including "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). In the TRO Order, Judge Freeman found that Mr. Gomez has satisfied this element, as he "is the sole source of financial support for his wife, who has received treatment for uterine cancer," and he requires daily blood pressure medication that he lacks access to while in custody. TRO Order at 5. His most recent detention further underscores the likelihood that he will suffer irreparable harm if he is re-detained. He was not given his required blood pressure medication or pain relievers for his sciatica; as a result, he was in intense pain throughout his detention. Reply Ex. B ¶¶ 6, 9–15.

The government does not dispute this finding. Mr. Gomez has shown irreparable harm.

**III. Public Interest and Balance of Equities**

In cases where the federal government is the opposing party, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are "staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2006) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Here, as Judge Freeman noted in the TRO Order, Mr. Gomez faces deprivation of his liberty without the requested injunctive relief. TRO Order at 6. In comparison, the harm potentially imposed on the government is minimal – a delay in his detention and removal in the event he ultimately fails to prevail on his habeas claims. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The government again does not contest this finding and instead focuses on the likelihood of success on the merits factor as being dispositive. I conclude that these factors weigh in Mr. Gomez's favor.

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, I ENTER the following preliminary injunction: Respondents are ENJOINED and RESTRAINED from re-detaining Mr. Gomez absent a material change in circumstances and further order of this Court.[2] Respondents are also ENJOINED and RESTRAINED from removing Mr. Gomez from the United States or transferring him out of the Northern District of California to preserve this Court's jurisdiction during the pendency of the action. Respondents are further PROHIBITED from imposing new conditions of release, such as electronic monitoring and in-person or virtual check-ins. No security bond is required. This Order shall remain in effect until further order of the Court.

**IT IS SO ORDERED.**

Dated: October 9, 2026



William H. Orrick
United States District Judge

[2] The government asked at the hearing when it would be allowed to re-detain Mr. Gomez, considering its view that he is a flight risk. The sentence preceding this footnote answers that question.